IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHEAL R. HODGSON,

                            Plaintiff,[1]

v.

WISCONSIN CENTRAL LTD, d/b/a CN,

                            Defendant.

OPINION and ORDER

19-cv-15-jdp

---

      Plaintiff Micheal Hodgson injured himself by falling down a flight of stairs while on the job for defendant Wisconsin Central Ltd. He is suing Wisconsin Central under the Federal Employers' Liability Act, contending that Wisconsin Central was negligent in failing to prevent his injury.

      Wisconsin Central has filed three motions that are ready for review: (1) a motion for partial summary judgment, Dkt. 16; (2) a motion to strike the testimony of Hans Timper, Dkt. 17; and (3) a motion to exclude ten fact witnesses disclosed by Hodgson on February 24, 2020, Dkt. 33. For the reasons explained below, the court will grant the motion to strike and grant the other two motions in part and deny them in part.

ANALYSIS

**A. Motion for partial summary judgment**

      Hodgson alleges that he was injured when "the hand rail for the stairs gave way causing [him] to fall off the stairs." Dkt. 1, ¶ 9. He says that his damages "were caused, in whole or in

---

[1] In some of their filings, the parties identify the plaintiff's first name as "Michael." The court has used the spelling in the complaint.

part, by the negligence of" Wisconsin Central. *Id.*, ¶ 10. From the expert report he submitted, I understand Hodgson to be contending that Wisconsin Central was negligent in failing to maintain the handrail.

FELA has the same elements as a negligence claim—duty, breach, causation, and damages—but "the quantum of evidence required to establish liability in an FELA case is much less than in an ordinary negligence action." *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990). Specifically, the causation requirement is met if "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957). The employer's duty under the statute is to keep the workplace "reasonably safe." *Abernathy v. E. Illinois R.R. Co.*, 940 F.3d 982, 988 (7th Cir. 2019).

For the purpose of summary judgment, Wisconsin Central concedes that a reasonable jury could find that it violated FELA. But Wisconsin Central seeks to narrow the issues for trial by eliminating some of Hodgson's bases for finding negligence. Specifically, Wisconsin Central moves for summary judgment on the questions whether it acted negligently by violating regulations of the Occupational Health and Safety Administration, the International Building Code, the Wisconsin Building Code, and the Wisconsin Safe Place Statute (Wis. Stat. § 101.11). *See* Fed. R. Civ. P. 56(a) (party may move for summary judgment on a "part" of a claim). Hodgson doesn't oppose much of Wisconsin Central's motion. But he says that the court should permit him to present evidence that Wisconsin Central violated 29 C.F.R. § 1910.25(b)(6), the Safe Place Statute, and the International Building Code.

### 1. OSHA regulation

Section 1910.25 is an OSHA regulation about stairways. Section 1910.25(b)(6) states that "[t]he employer must ensure: . . . each stair can support at least five times the normal anticipated live load, but never less than a concentrated load of 1,000 pounds (454 kg) applied at any point." Wisconsin Central contends that § 1910.25(b)(6) doesn't apply because Hodgson alleges that the handrail, not the stairs themselves, was inadequate. Hodgson doesn't respond meaningfully to this contention. He points to testimony of his expert, Hans Timper (an architect), who said that it is reasonable to infer that Wisconsin Central violated § 1910.25(b)(6) because Hodgson weighs 160 pounds. Dkt. 21 (Timper Dep. 77:6–14). But that misses Wisconsin Central's point, which is that § 1910.25(b)(6) says nothing about how much weight handrails must be able to bear. Because Hodgson's doesn't address that issue, and the plain language of the regulation doesn't apply to handrails, the court will grant summary judgment to Wisconsin Central on this issue.

### 2. Safe Place statute

Wisconsin's Safe Place statute, Wis. Stat. § 101.11, requires employers to provide a safe place of employment. Hodgson is not raising a separate claim under § 101.11, and he doesn't explain clearly in his brief how he intends to rely on that statute. But I understand him to be saying that a violation of § 101.11 is evidence that Wisconsin Central was negligent for the purpose of his FELA claim. Regardless how Hodgson intends to rely on § 101.11, that statute has no place in this lawsuit. "What constitutes negligence for [FELA's] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Urie v. Thompson,* 337 U.S. 163, 174 (1949). So I will grant Wisconsin Central's motion for summary judgment on this issue.

### 3. International Building Code

Neither side explains what the International Building Code is, but it appears to be a model code relating to safety standards for buildings. Again, Hodgson appears to be relying on portions of the code to show that Wisconsin Central violated the standard of care. Hodgson's expert, architect Hans Timper, says that Wisconsin Central violated provisions that require handrails to be able to resist "a load of 50 pounds per linear foot" and a "concentrated load of 200 pounds." Dkt. 17-1, at 2.

Neither side develops an argument regarding whether industry standards can inform the standard of care for a FELA claim. Wisconsin Central says that they can't, but it doesn't cite any authority for that proposition. The court of appeals seems to assume that industry standards are relevant. *See Abernathy*, 940 F.3d at 993 (discussing "industry standards" in the context of determining what is "reasonably safe"). But Wisconsin Central raises another issue, which is that Hodgson's only evidence for a violation of the standards is Timper's report, which Wisconsin Central says is inadmissible. Because this argument dovetails with Wisconsin Central's motion to exclude Timper's testimony, the court will consider that issue here.

The court agrees that Timper's report does not satisfy Federal Rule of Evidence 702, which requires the court to determine whether an expert opinion is reliable and helpful to the jury. *See Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 893-94 (7th Cir. 2011). The proponent of the expert must show three things: (1) the opinion is based upon sufficient facts or data, (2) the opinion is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *U.S. v. Lupton*, 620 F.3d 790, 798 (7th Cir. 2010). Hodgson hasn't shown any of those things.

Timper's report is a mere two pages. Timper doesn't discuss the quality of the workmanship of the handrail or explain his basis for concluding that the handrail had a particular defect. Instead, Timper's report includes four components: (1) a short summary of Hodgson's allegations; (2) a list of things that Timper reviewed; (3) excerpts from the International Building Code and other authorities; (4) a conclusion that Wisconsin Central failed to comply with the cited authorities. Timper doesn't explain how or why he believes that Wisconsin Central violated any of the rules that he cites and he doesn't explain why he believes that the hand rail was unsafe. Although he cites various documents that he reviewed, he doesn't explain how any of those documents informed his opinion.

Timber's report isn't admissible. "In the idiom of Rule 702, the expert's report contains no indication of the 'facts or data' relied on, no indication that testimony based on the report would be 'the product of reliable principles and methods,' and no indication that in formulating his opinion the expert 'applied the principles and methods reliably to the facts of the case.'" *Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011). It is well established that a court may not "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Such a conclusory analysis would not assist the jury in determining whether Wisconsin Central was negligent. So the court will not consider Timper's report and will not permit Timper to testify at trial.

Wisconsin Central contends that, without an expert, Hodgson has no basis for relying on industry regulations. But Wisconsin Central doesn't explain why Hodgson may not cross examine Wisconsin Central's expert about relevant provisions of the Industry Building Code. *See LaBrec v. Wisconsin and Southern Railroad Company*, No. 17-cv-828-jdp (W.D. Wis. Jan. 17,

2019), Dkt. 62, at 4 (allowing plaintiff to cross examine defendant's witnesses about compliance with a manual). So the court will grant Wisconsin Central's motion to strike Timper's testimony but deny the motion to exclude evidence about the International Building Code.

**B. Motion to exclude newly disclosed witnesses**

On February 24, 2020, Hodgson identified ten new fact witnesses that he wishes to call at trial. Dkt. 33-1. Hodgson says that all of the new witnesses have "knowledge as to Plaintiff's life, physical condition prior to his injuries, his condition subsequent to his injuries, [and] effects of the injuries on the plaintiff." *Id.* Although Hodgson had already disclosed other witnesses, such as his wife, who could testify about the same subject matter, he says that the additional witnesses are necessary to rebut three new witnesses that Wisconsin Central disclosed on February 10, 2020. Dkt. 33-3. Wisconsin Central says that its new witnesses were present during a court hearing with Hodgson in November 2019 and that they will "impeach [Hodgson's] testimony that he is constantly spasming in pain." Dkt. 36, at 3.

Wisconsin Central objects to Hodgson's new disclosures as untimely, contending that Hodgson was aware of all of the witnesses long before he disclosed them. But Wisconsin Central also delayed in disclosing its new witnesses: it acknowledges that it was aware of those witnesses no later than "early December" 2019. *Id.* at 1. It's opening brief also says nothing about prejudice that it will suffer if the additional witnesses are allowed to testify. In its reply brief, it says that it will be prejudiced by having to depose ten new witnesses before trial. It also says that ten witnesses are unnecessarily cumulative. Those are both fair points. To minimize any unfair prejudice or cumulative testimony, the court will allow Hodgson to choose two additional witnesses. That should be sufficient for Hodgson to present his side of the story.

6

And because the scope of the witnesses' testimony is limited, it should not be unduly burdensome for Wisconsin Central to depose them, if it wishes to do so.

**C. Schedule**

One final point about the case schedule. Because of the coronavirus emergency, the court has suspended all jury trials through May 18, 2020.[2] The trial in this case is scheduled for June 1, 2020, so it falls just outside that window. But the court will continue to monitor public health information and we will take additional steps as appropriate. For now, all pretrial deadlines remain in place. But any party may request relief from a specific deadline with a motion that explains the circumstances that warrant relief.

ORDER

IT IS ORDERED that:

1. Wisconsin Central Ltd.'s motion for partial summary judgment, Dkt. 18, is GRANTED in part and DENIED in part. Plaintiff Micheal Hodgson may not rely on state law or OSHA regulations at trial. But Hodgson may cross examine Wisconsin Central's expert about industry standards.

2. Wisconsin Central's motion to exclude the testimony of Hans Timper, Dkt. 16, is GRANTED.

3. Wisconsin Central's motion to exclude the testimony of ten witnesses disclosed by Hodgson on February 24, 2020, Dkt. 33, is GRANTED in part and DENIED in

---

[2] *See* U.S. District Court for the Western District of Wisconsin, "Coronavirus Update" (Mar. 18, 2020), https://www.wiwd.uscourts.gov/coronavirus-update.

part. Hodgson may have until April 8, 2020, to identify two of the ten witnesses he will call at trial.

Entered March 31, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge