IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHEAL R. HODGSON,             )
                                         )
            Plaintiff,          )      Case No. 3:19-cv-00015-jdp
                                         )      District Judge James D. Peterson
vs.                               )      Magistrate Judge Stephen L. Crocker
                                       )
WISCONSIN CENTRAL LTD.,     )
a corporation d/b/a "CN",       )
                                       )
            Defendant.     )

**Plaintiff's Response to Defendant's Motion *In Limine* – No. 11
Limiting Plaintiff's Questioning Regarding Safety Rules,
Policies, and Duties, and Other "Reptile Theory" Questions of
WCL Employee Witnesses (Doc. # 60)**

**Introduction**

Defendant's nebulous motion *in limine* seeking to prevent Plaintiff from referring to rules, pointing out issues regarding safety, or arguing to the jury as the conscience of the community is an improper motion. The admissibility of evidence at trial is determined by the rules of evidence, as well as relevant statutes and case law. Essentially, the motion attempts to muzzle Plaintiff's counsel completely before the trial even begins.

Almost 150 years ago, the U.S. Supreme Court recognized that the jury is the conscience of the community. Though it did not use that phrase, it adopted the philosophy that the jury is in the best position to determine what members of that community should expect from each other. In *Sioux City & Pac. R.R. Co. v. Stout*, the U.S. Supreme Court affirmed a judgment finding a railroad negligent in its maintenance of a turntable, which injured a child, relying on its trust in the jury to determine what safety is expected from companies operating in the community:

> Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer,

the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion.

84 U.S. 657, 664 (1873).

The U.S. Supreme Court used the phrase more recently in *Witherspoon v. Illinois*, where stating that "a jury . . . can do little more – and must do nothing less – than express the conscience of the community."  391 U.S. 510, 519 (1968); *see also Mary Beth v. City of Chicago*, 723 F.2d 1263, 1276 (7th Cir. 1983) (noting that "[t]he jury is the collective conscience of the community, and its assessment of damages must be given particular weight when intangible injuries are involved.").

In support of its motion, Defendant cites to its experience with Plaintiff's firm in other FELA[1] cases but it cites to no specific past conduct by counsel as examples of what it considers is improper.  (Doc. # 60 at 2.)  This raises the question: if Defendant believes Plaintiff's counsel's conduct is so objectionable, why doesn't it give examples of the improper conduct?  Plaintiff submits that the real reason for Defendant's motion is an impermissible attempt to limit Plaintiff's trial strategies and the fundamental role juries play as the community conscience in determining fault and damages.

## I. Motions *in limine* are intended to establish the admissibility of specific evidence, not limit trial strategy.

Defendant's nebulous motion is contrary to the purpose of pre-trial evidentiary motions. Motions *in limine* serve a limited purpose: "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial."  *Black's Law Dictionary*, 1109 (9th ed. 2009); *see also Ajala v. Swiekatowski*, 2015 WL 5009802, * 3 (W.D. Wis. Aug. 19, 2015) (noting "the purpose of motions in limine is to resolve trial-related evidentiary issues.").  Evidence is excluded under a

---

[1]   The "FELA" refers to the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60.

motion *in limine* "only when evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)).

Indeed, *Hawthorne Partners* explains the proper function such motions play in a pre-trial setting:

> Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.  Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.

*Id.* at 1400-01 (citations omitted).  "Evidentiary rulings made by a trial court during motions *in limine* are preliminary and may change depending on what actually happens at trial."  *Walzer v. St. Joseph State Hospital*, 231 F.3d 1108, 1113 (8th Cir. 2000) (citing *Luce*, 469 U.S. at 41).

Moreover, motions *in limine* are not intended to be used to limit trial strategy:

> The motion [*in limine*] is a useful tool, but care must be exercised to avoid indiscriminate application of it lest parties be prevented from even trying to prove their contentions.  That a plaintiff may have a thin case or a defendant a tenuous defense is ordinarily insufficient justification for prohibiting such party from trying to establish the contention.  Nor should a party ordinarily be required to try a case or defense twice – once outside the jury's presence to satisfy the trial court of its sufficiency and then again before the jury.

*Lewis v. Buena Vista Mutual Ins. Ass'n.*, 183 N.W.2d 198, 200-01 (Iowa 1971).  Defendant fails to demonstrate any specific evidence that it asserts is inadmissible.  Instead, they seek to summarize for the Court a purported trial strategy set forth in a book and prevent Plaintiff's counsel from using that technique or strategy.

Broad and generic motions *in limine* may seem innocuous, but their strategic value is great for the moving party.  Such motions add additional steps to a trial that the rules of evidence never contemplated.  The proper function of a motion *in limine* is to present "questions of evidence

3

admissibility" for determination in advance.  *Uptain v. Huntington Labs, Inc.*, 723 P.2d 1322, 1330 (Colo. 1986).  Just as important, rulings on broad and generic motions seeking to "exclude broad categories of evidence should rarely be employed.  A better practice is to deal with questions of admissibility of evidence as they arise."  *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  Defendant's motion does not target any specific evidence, but instead targets a trial strategy.  Trial strategy is not evidence and not a proper subject for a motion *in limine.*

## II.      The Federal Rules of Evidence never have provided a basis for prohibiting use of a trial strategy.

Defendant's motion relies on a theory set forth in Ball & Keenan, *Reptile: The 2009 Manual of the Plaintiff's Revolution*, 17 (2009).  (Doc# 60 at 1.)  The book sets forth a familiar rather than nefarious strategy: (1) identify the specific safety rules that apply to (and may even be recognized by) the defendant and show they were broken; (2) show the defendant agrees with the importance of such rules – many of which the defendant may have used or recognized as part of its own practice or procedure – to protect member of the public, including your client; and (3) show how defendant violated those rules and caused harms and losses.

Defendant argues that safety rules are irrelevant in Plaintiff's FELA case because the facts issues are limited to "(1) foreseeability; (2) duty of care owed to Plaintiff; (3) breach of that duty or care; (4) that the breach proximately caused Plaintiff's injuries; and (5) that Plaintiff suffered damages as a result."[2]  (Doc # 60 at 5.)  Defendant's argument is patently false.  Presentation and

---

[2]  In support of its statement setting out the elements of proving a FELA negligence claims, Defendant cites to *Abernathy v. E. Illinois R.R. Co.*, 940 F.3d 982 (7th Cir. 2019).  (Doc # 60 at 5.)  Defendant's summary of the law contained in *Abernathy* is less than candid.  Defendant states that the causation standard in FELA cases is a proximate cause standard, a standard that has been rejected by the Seventh Circuit and the U.S. Supreme Court. Indeed, *Abernathy* does use "proximate cause."  Instead, the decision describes the FELA causation standard as a "liberal causation standard" where "'[j]uries in [FELA] cases are properly instructed that a defendant railroad 'caused or contributed to' a railroad worker's injury 'if [the railroad's] negligence played a part—no matter how small—in bringing about the injury.'"  *Id.* at 990-91 (citing *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 705 (2011)) (additional citations omitted).  *Abernathy's* reliance on *McBride* is especially telling as it relates to Defendant's lack of candor when it describes FELA causation standard as a proximate cause standard.  *McBride* rejected the railroad's argument

use of "safety rules" to establish the applicable standard of care for Defendant is relevant to the fact issue of whether the railroad properly discharged its duty of care. *See Green v. Denver, Rio Grande Western R.R. Co.,*59 F.3d 1029, (10th Cir. 1995) (in sending case back for a new trial, Tenth Circuit noted that a violation of a railroad rule that sets out objective standards "could warrant an instruction on negligence *per se*") (citing *Parra v. Atchison, Topeka & Santa Fe Ry.*, 787 F.2d 507, 509 (10th Cir. 1986)); *see also Ybarra v. Burlington Northern, Inc.*, 689 F.2d 147, 150 (8th Cir. 1982) (railroad had a duty to follow and enforce work rules and procedures). Accordingly, the jury must be instructed as to what "safety rules" Defendant had in place that were required to be followed.

> Furthermore, Defendant agrees that personal and community safety are important:
>
> Safety is a Core Value at CN
>
> Safety is not just a priority at CN, but a deeply held core value.  Our vision is to become the safest railway in North America.  We think it is the right thing to do four our employees, customers and communities and it is good for business.[3]

Surely, Plaintiff should not be prohibited from impeaching Defendant's conduct with its own statements concerning personal and community safety.

Defendant seeks to improperly control and manipulate Plaintiff's trial strategy.  The admissibility of evidence is not based on what a trial consultant believes will influence a jury. Rather, admissibility of evidence is strictly controlled by the rules of evidence, statutes and case law.  The defense bar also has its jury consultants and organizations that teach techniques in an attempt to persuade juries.  The Federal Defense & Corporate Counsel and DRI publish articles

---

that the FELA "incorporates 'proximate cause' standards developed in nonstatutory common-law tort actions."  564 U.S. at 688.  Accordingly, notions of proximate cause are inapplicable to FELA cases.

[3]  Defendant's policy is taken from its website: www.cn.ca/en/customer-centre/safety-guidelines-and-regulations.

and conduct seminars.  They teach defense lawyers how jurors think and how to target those jurors

who are susceptible to defense arguments.  They teach how to identify in voir dire which jurors

will favor the defendant and to target arguments at those jurors.  Arguing against the "Reptile" on

unfair prejudice grounds is akin to seeking to prohibit a defense strategy designed to show a

plaintiff is malingering on the basis that the strategy is unfair.  In other words, defendants should

not be allowed to limit plaintiffs' counsel's strategy while implementing arguably similar

strategies.  *See Heffernan v. City of Paterson, N.J.*, __ U.S. __, 136 S.Ct. 1412, 1418 (2016) (noting

"in the law, what is sauce for the goose is normally sauce for the gander").

### III.    Defendant's motion is contrary to fundamental principles of tort law.

The underlying principles of tort law are based on insuring public safety and deterring

wrongful acts that threaten safety.  This notion is reflected in leading treatises, *see* Dan B. Dobbs,

*The Law of Torts* § 8 at 12 (2000) (noting "[t]he most commonly mentioned aims of tort law are

(1) compensation of injured persons and (2) deterrence of undesirable behavior."); as well as the

Seventh Circuit, *see Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 455 (7th Cir. 1982)

(discussing Illinois law and assuming it reflects the objectives of tort law "to compensate the

victims of wrongdoing and to deter future wrongdoing.").

Moreover, actionable negligence itself is a relational concept.  There is no such thing as

"negligence in the air."  Conduct without relation to others cannot be negligent.  It becomes

negligent only as it gives rise to an appreciable risk of injury to others as articulated in the landmark

case of *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).[4]

---

[4]  Judge Cardozo (the then Chief Judge of the Court of Appeals of New York) wrote:

> We are told that one who drives at reckless speed through a crowded city street is guilty of a
> negligent act and, therefore, of a wrongful one irrespective of the consequences.  Negligent the act
> is, and wrongful in the sense that it is unsocial, but wrongful and unsocial in relation to other
> travelers, only because the eye of vigilance perceives the risk of damage. If the same act were to be
> committed on a speedway or a racecourse, it would lose its wrongful quality. *The risk reasonably*

Here, the jury must consider not only the danger posed to plaintiffs due to defendants' failure to exercise due care, but also the danger posed to an entire class of the community as the Seventh Circuit recognized when discussing the FELA framework:

> [T]he FELA provides railroad workers not only with substantive protection against negligent conduct by the railroad, but also affords an injured worker a remedy suited to his needs, untrammeled by many traditional defenses against tort liability. This statute thus serves to provide an injured worker with an expeditious recovery and also gives a railroad the incentive to maintain vigilance over the safety of its workers and, concomitantly, the conditions in which they must work.  An injured railroad employee can recover under the FELA as long as the employer's negligence "played any part, even the slightest, in producing the injury . . . for which damages are sought."

*Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507, 512 (7th Cir. 1993) (citations omitted).

Further, it is the basic premise of a jury in civil negligence cases to include reasonable members of the community to determine what they would have done under the same circumstances.  Indeed, comments to the Restatement (Second) of Torts section titled "Conduct of a Reasonable Man: The Standard" makes clear that protection of the community is the key when establishing fault:

> Negligence is a departure from a standard of conduct demanded by the community for the protection of others against unreasonable risk. The standard which the community demands must be an objective and external one, rather than that of the individual judgment, good or bad, of the particular individual.  It must be the same for all persons, since the law can have no favorites . . . .

Restatement (Second) of Torts § 283 cmt. c (1965).

Thus, drawing reasonable inferences from the evidence based upon the juror's experience, juries decide what conduct is acceptable in their communities.

---

*to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.*

248 N.Y. at 344 (citation omitted) (emphasis added).

## IV.     The Role of the Community.

"Juries – comprised as they are of a fair cross section of the community – are more representative institutions than is the judiciary; they reflect more accurately the composition and experiences of the community as a whole, and inevitably make decisions based on community values more reliably, than can the segment of the community that is selected for service on the bench."   *Schriro v. Summerlin*, 542 U.S. 348, 360, 360 (2004) (Breyer, J. dissenting) (citation omitted) (internal quotation marks omitted).  Accordingly, community values drive justice. *See Taylor v. Louisiana*, 419 U.S. 522, 529 n. 7 (1975) (In discussing 28 U.S.C. § 1861, Justice White quoted legislative history that "[i]t must be remembered that the jury is designed not only to understand the case, but also to reflect the community's sense in deciding it") (citation omitted) (internal quotation marks omitted).  Undeniably, the whole point of our system of trial by jury is to invite juries to apply community standards, rules and norms to determine their verdict.  *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on Law of Torts* § 37, 237-38 (5th ed. 1984) (not "our legal system has entrusted negligence questions to jurors, inviting them to apply community standards.").

The importance of juries drawing from community standards is also reflected in materials on the U.S. District Courts' website that contains a video presentation titled "We the People: The Honor of Jury Service."[5]  In the video, Justice Sandra Day O'Connor explains the importance of having full participation of the entire community by stating: "We want a full sampling of the community because these are the people who we are entrusting our lives, our honor and our most important issues."

---

[5]   The video can be viewed on the U.S. Courts website: *Juror Experiences,* www.uscourts.gov/services-forms/jury-service/learn-about-jury-service/juror-experiences   (last accessed on June 3, 2020).

U.S. Supreme Court precedent further supports the legal precept that it is the role of the jury to speak for the community. *See Taylor v. Louisiana*, 419 U.S. at 529 n. 7.  In fact, the U.S. Supreme Court noted the importance that a jury reflect the entire community in striking down a Louisiana law limiting women's right to serve on a jury by noting: "[t]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial."[6]  *Id.* at 528.  The importance of juries (representing entire communities) deciding civil matter is also well-established.  *See, e.g. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (In determining whether a case was properly dismissed under the doctrine of forum non conveniens, the Court noted that "in cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the county where they can learn of it by report only.  There is a local interest in having localized controversies decided at home.").

The "Reptile" book's authors explain that safety is the reasonable standard of conduct expected from members of the community.  Their method seeks to shift the view of a tort case from one of endangering jobs and harming industry as tort reform proponents have espoused, to one that uses safety as the reasonable course of conduct by which a litigant's behavior is judged.  The authors do not advocate playing upon a juror's emotion or sympathies as suggested by Defendant.  In fact, the "Reptile's" authors reject such efforts: "Our method is to get jurors to decide on the entirely logical basis of we always want jurors to 'feel' strongly that we should win.  But the Reptile gets jurors to that point not on the basis of sentiment, but what is safe. Ball & Keenan, *Reptile: The 2009 Manual of the Plaintiff's Revolution*, 39 (2009).

---

[6] *Taylor* involved a criminal matter, which jury trials are guaranteed under the Sixth Amendment of the U.S. Constitution.  Although Plaintiff's pending lawsuit involves a civil matter, the Seventh Amendment provides the same right to a jury trial.

The "Reptile" argument does nothing more than advocate for holding a defendant liable for unreasonable or unsafe conduct.  A defendant is still free to present defenses and attempt to persuade the jury with whatever permissible arguments it desires under the law.

**V.      Nothing in Plaintiff's trial strategy violates the "Golden Rule."**

Defendant argues that asserting that the jury is the conscience of the community impermissibly inserts the Golden Rule into the trial.  (Doc # 60 at 2-3).  Defendant's assertion fails to comprehend the Golden Rule. A Golden Rule argument is one that asks the jury "to put itself in the plaintiff's position . . .." *Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982). Such arguments are generally improper when asking the jury to award damages "because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.* (citations and internal quotation marks omitted).

However, Golden Rule arguments are not improper "when urged on the issue of ultimate liability." *Shultz v. Rice,* 809 F.2d 643, 651-52 (10th Cir. 1986) (quoting *Stokes v. Delcambre,* 710 F.2d 1120, 1128 (5th Cir.1983)) (internal quotation marks omitted).

Moreover, the majority of states that have considered the question hold that the prohibition against Golden Rule arguments bars arguments that seek to "inflame the jury and encourage an increased damages awards." *Lopez v. Langer*, 761 P.2d 1225, 1230 (Idaho 1988). Golden Rule arguments that encourage the jurors to evaluate the reasonableness of the parties' conduct based on their own common sense and life experiences are permissible. *Id.* at 1231.

Therefore, even assuming *arguendo* this Court were to find the phrases like "personal safety" and "community safety" are akin to Golden Rule arguments, these phrases are not improper with regard to the question of liability. The prohibition against Golden Rule arguments properly

applies only to arguments intended to inflate a jury's award of damages; the prohibition does not apply to arguments relating to the reasonableness of a party's conduct.

In proper use of the Golden Rule argument is discussed in *Lopez,* where a teenager driving a car fatally injured the plaintiff's wife. The plaintiff filed a wrongful death suit against the teenager for negligence, and against the teenager's father, the titled owner of the car, for negligent entrustment. The father argued that, despite being the title holder, he was not the vehicle's "owner" for purposes of negligent entrustment liability. The father presented evidence that prior to the crash he took steps to transfer title to the teenager's mother with whom the teenager was living. The father's attorney asked the jury to place themselves in the same position as the father with respect to the transfer of title. The plaintiff claimed that counsel's comment was an improper Golden Rule argument. The Idaho Supreme Court disagreed, holding that where Golden Rule arguments are "used to influence a jury's award of damages, they will not be permitted" but that "where such arguments merely appeal, in a moderate manner, to the jury's common sense by asking them to ascertain the reasonableness of a defendant's actions (or a plaintiff's actions) in the context of the case, they will be permitted."  761 P.2d at 1231.

Similarly in the pending case, Plaintiff's counsel should be permitted to argue whether Defendant exercised reasonable care based on the jurors' personal experience.

## Conclusion

Defendant has, in effect, requested this Court rule in a vacuum without hearing or seeing Plaintiff's evidence or argument. Thus, at best, Defendant's motion is premature. Instead, objections should be made at trial if Defendant feels that improper arguments are made. As it stands, however, Defendant's motion is an improper attempt to limit Plaintiff's case and trial strategy in this matter without basis.

Respectfully submitted,

HUNEGS, LeNEAVE & KVAS, P.A.

Dated:  6/5/2020            *s/ Thomas W. Fuller*
                           Cortney S. LeNeave, MN ID 018424X
                           Thomas W. Fuller, MN ID 394778
                           Attorneys for Plaintiff
                           1000 Twelve Oaks Center Drive, Suite 101
                           Wayzata, Minnesota 55391
                           (612) 339-4511
                           cleneave@hlklaw.com
                           tfuller@hlklaw.com