IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL R. HODGSON,

                             Plaintiff,[1]                          OPINION and ORDER

        v.

WISCONSIN CENTRAL LTD, d/b/a CN,                          19-cv-15-jdp

                             Defendant.

---

This case brought under the Federal Employers' Liability Act is scheduled for a final pretrial conference on June 16, 2020. This opinion will address the parties' motions in limine, ruling on most of them and noting issues that require further discussion at the conference.


ANALYSIS

A.  Hodgson's motions in limine

   1.  Motion to "exclude RRB benefits, or any other collateral source" (Dkt. 68)

Hodgson asks the court to exclude evidence of his "RRB benefits," but he doesn't explain what those are. Wisconsin Central says that RRB stands for Railroad Retirement Board Benefits, which are a substitute for Social Security benefits. Wisconsin Central also says that Hodgson is now receiving "RRB disability benefits" as a result of his accident.

The parties agree that the jury may not consider the RRB benefits to determine the amount of Hodgson's damages. But Wisconsin Central says that the benefits are admissible to show that Hodgson is malingering and failing to mitigate his damages by not working:

---

[1] Hodgson spells his first name as "Micheal" in the complaint, but all his trial documents say "Michael," so the court has amended the caption to reflect the correct spelling.

> RRB benefits provide plaintiff a source of income without having to work. Plaintiff, however, is eligible for RRB benefits only so long as he is unable to work. Because plaintiff would lose a source of free income if he were to resume working, evidence that he is receiving RRB benefits shows that he has an incentive to malinger. Moreover, evidence that plaintiff is receiving RRB benefits shows that he has the financial means to malinger. Receiving RRB benefits means that plaintiff can pay for life's necessities without working, and can thus malinger without fear of starvation or homelessness.

Dkt. 99, at 6–7. Wisconsin Central asks that it be allowed to present evidence that Hodgson is receiving benefits, but it is not seeking to disclose the amount.

Hodgson contends that the benefits aren't admissible under *Eichel v. New York Cent. R. Co.*, 375 U.S. 253 (1963). In that case, the Court rejected the railroad's argument that benefits received under the Railroad Retirement Act are admissible to "show a motive for [the employee's] not continuing work, and for his deciding not to continue going back to work after the last accident." *Id.* at 254–55. The Court reasoned that "there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension" and that "evidence of collateral benefits is readily subject to misuse by a jury." *Id.* at 255. The Court went so far as to say that "it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act . . . were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act." One district court in this circuit interpreted *Eichel* as holding that railroad benefits "cannot even be mentioned in an effort to establish a plaintiff's motive to exaggerate the extent of his injury or disability." *Larson v. Wisconsin Cent. Ltd.*, No. 10-C-446, 2012 WL 359672, at *1 (E.D. Wis. Feb. 2, 2012).

Wisconsin Central says that *Eichel* isn't a categorical bar on introducing evidence of railroad benefits, but the only Seventh Circuit case it cites isn't a FELA case and doesn't

mention *Eichel*. *See Brandt v. Vulcan, Inc.*, 30 F.3d 752, 760 (7th Cir. 1994). And the issue in *Brandt* wasn't about malingering, it was whether the defendant could use the benefits to impeach an inconsistent statement. Even if *Eichel* could be distinguished under some circumstances, Wisconsin Central doesn't identify any facts in this case that make it distinguishable from *Eichel*, and the court sees none.

The court will grant the motion to exclude Hodgson's RRB benefits except for the purpose of impeachment. Hodgson also asks the court to exclude evidence of any other collateral source, but he doesn't identify any other sources, and the court declines to rule on that issue in the abstract.

### 2. Motion to exclude evidence of future retirement benefits (Dkt. 70)

Hodgson asks to exclude evidence that he may be eligible for retirement benefits at the age of 60. Wisconsin Central says that it has no intention of offering such evidence, so the court will grant the motion as unopposed.

Wisconsin Central says that it "will present expert testimony via Gary Skoog, regarding statistics related to work-life expectancy of railroad workers," Dkt. 101, at 2, but that is outside the scope of Hodgson's motion, so the court need not consider that issue.

### 3. Motion to exclude evidence of contributory negligence (Dkt. 72)

Hodgson says that Wisconsin Central has identified "no reliable evidence" that Hodgson was negligent, so the court shouldn't allow Wisconsin Central to argue that issue to the jury. Dkt. 73, at 3. But if Hodgson believed that Wisconsin Central didn't have sufficient evidence on that issue, he should have moved for summary judgment; a motion in limine isn't the place to seek judgment as a matter of law. *See Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346-bbc 2014 WL 5023098, at *3 (W.D. Wis. Oct. 8, 2014) (denying motion in limine

because it was "a thinly-veiled motion for summary judgment"). If Wisconsin Central doesn't have evidence at trial of Hodgson's negligence, Hodgson may file a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 at the appropriate time. *See id.*

Hodgson also says that Wisconsin Central should not be permitted to present evidence regarding assumption of risk, which is not an available defense under FELA. *See Norfolk S. Ry. Co. v. Sorrell,* 549 U.S. 158, 168 (2007). But Hodgson hasn't identified any assumption of risk evidence that Wisconsin Central intends to offer, so the court will not rule on that request at this time.

### 4.  Motion to exclude testimony of Brian Weaver (Dkt. 74)

Weaver is an engineer with an M.S. in engineering mechanics and a B.S. in biomechanics. He offers more than a dozen opinions, some of which are about the condition of the stair system at issue in this case, some of which are about the way that Hodgson's accident occurred, and one of which is about Hodgson's ability to perform manual labor. *See* Dkt. 104-3, at 4–5. Hodgson moves to exclude Weaver's testimony, focusing on the last two categories of opinions. Hodgson contends that Weaver isn't qualified to give those opinions, he ignored important facts, he failed to adequately explain his opinions, and he failed to provide all of the underlying data.

In its response, Wisconsin Central relies heavily on a new, 80-paragraph declaration signed by Weaver. *See* Dkt. 104. Hodgson hasn't had a chance to reply to that declaration, which is an untimely expert disclosure, so the court will reserve a ruling on this motion until the final pretrial conference.

5.  **Motion to "exclude any safety rules and evidence that delegates defendant's non-delegable duty to provide plaintiff with a reasonably safe place to work" (Dkt. 76)**

This motion is somewhat hard to follow, but it appears to be another contention that Wisconsin Central shouldn't be permitted to argue at trial that Hodgson was negligent. But FELA allows the defendant to raise a comparative negligence defense, *see Norfolk S. Ry,* 549 U.S. at 171, so the court will deny this motion. Again, if Wisconsin Central offers evidence of assumption of risk, Hodgson may object; or if Wisconsin Central fails to offer evidence of Hodgson's own negligence, Hodgson may move for judgment as a matter of law.

6.  **Motion to exclude evidence of "previous medical conditions" (Dkt. 78)**

Hodgson says that "[t]here is no competent evidence that any prior condition, injury or claim caused or contributed to Plaintiff's current injury and damages," Dkt. 79, at 2, so he wants to exclude evidence of those conditions. In response, Wisconsin Central doesn't contend that any previous medical conditions caused Hodgson's injuries, and it doesn't say that it wants to present evidence of "previous medical conditions" per se. Instead, Wisconsin Central raises a somewhat different issue in its opposition brief: Hodgson's medical records from before the accident show that he has a history of malingering. Wisconsin Central says that such evidence isn't barred under Federal Rule of Evidence 404(b) for two reasons: (1) Wisconsin Central's medical experts relied on Hodgson's medical history to support their opinions that he is malingering now; and (2) "prior instances of [Hodgson] exaggerating his symptoms are evidence of his intent" when "when he walks into a doctor's office—whether he intends to get care for his pain or whether he intends to simply convince a doctor he is in pain to further his case." Dkt. 106, at 4.

The court will grant as unopposed Hodgson's motion as it relates to evidence or argument that his previous medical conditions caused his current injuries. But Hodgson didn't anticipate the issue that Wisconsin Central raises in its opposition brief, so resolution of that issue will have to wait for the final pretrial conference.

## B.   Wisconsin Central's motions in limine

### 1.   "Omnibus motion regarding Dr. Joseph Hebl" (Dkt. 44)

#### a.   Exclude Hebl's opinion on causation dkt44

Joseph Hebl is a physician who specializes in occupational medicine. He provided a 43-page report offering opinions on multiple issues, including that Hodgson's injuries were caused by his accident at the workplace. Wisconsin Central doesn't challenge Hebl's qualifications, but it contends that Hebl's causation opinion is unreliable and unhelpful for two reasons: (1) he didn't explain how he reached his opinion except to say he relied on medical records and his experience; (2) he didn't consider other possible causes of Hodgson's medical conditions.

Hebl's report is lengthy, but most of it is simply a summary of Hodgson's medical records since the accident. The court's review of the report revealed only one sentence on causation: "It is my opinion, based on my review of extensive medical records from the date of the patient's work injury up to the present, as well as my examination of the patient that all the above-mentioned diagnoses, evaluations, and treatments represent the direct causal result of the patient's work injury of July 20, 2016." Dkt. 44-4, at 39. Hodgson doesn't point to any other portion of the opinion that elaborates on this conclusion.

It is well established that experts must *explain* the basis for their opinion, not just state a conclusion. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ( "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence

that is connected to existing data only by the *ipse dixit* of the expert."); *Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011) ("Mere conclusions, without a hint of an inferential process, are useless to the court."). The court of appeals has applied this principle in FELA cases. *See, e.g., Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 776 (7th Cir. 2014) (citing *Joiner*, 522 U.S. at 146).

So the court is inclined to grant the motion to exclude Hebl's causation opinion. But the court will give Hodgson one more opportunity to defend the opinion at the final pretrial conference.

### b.  Preclude Hodgson from referring to Hebl as his "doctor" or "treater"

This is the first of several motions in which Wisconsin Central wishes to prohibit Hodgson and his counsel from describing others with particular terms. In this motion, Wisconsin Central says that Hodgson should not be permitted to describe Hebl as his doctor because Hodgson's counsel is paying Hebl and there were long gaps between Hodgson's visits with Hebl. But Hodgson says that Hebl has been providing treatment to him, so the court will not preclude Hodgson from giving that testimony. Wisconsin Central is free to bring out any contrary or contextualizing information on cross-examination.

### 2.  Motion to preclude references to certain standards (Dkt. 45)

In the summary judgment order, the court concluded that Hodgson could not rely on OSHA regulations or Wisconsin's Safe Place statute, Wis. Stat. § 101.11, to prove that Wisconsin Central was negligent. *See* Dkt. 37. As for the OSHA regulations, the court stated that the regulation Hodgson cited wasn't relevant to this case because the regulation said nothing about handrails. *Id.* at 3. And § 101.11 was also irrelevant because state law has no bearing on the standard of care under FELA. *Id.* at 4. But the court denied Wisconsin Central's

motion to bar Hodgson from relying on the International Building Code and other industry standards. Although the court excluded the testimony of Hodgson's architectural expert (who concluded in his report that Wisconsin Central had violated industry standards), the court said that "Wisconsin Central doesn't explain why Hodgson may not cross examine Wisconsin Central's expert about relevant provisions of the Industry Building Code." *Id.* at 5.

Wisconsin Central moves to preclude Hodgson from relying on OSHA regulations or Wis. Stat. § 101.11. Hodgson doesn't identify any admissible purpose for relying on those rules, so the court will grant that request.

Wisconsin Central also says that Hodgson should not be permitted to refer to the International Building Code except on cross examination if Wisconsin Central "opens the door to it on direct." Dkt. 45, at 2. Hodgson objects to this, saying that it goes beyond what the court said in the summary judgment order.

Hodgson is correct that the court did not hold that he is prohibited from questioning Wisconsin Central's witnesses about industry standards unless they "open the door" to that issue. Hodgson is free to call those witnesses as part of his own case if he wishes. But if Hodgson means to say that he intends to call one of his own witnesses to talk about industry standards, he will have to identify that witness in advance and explain why the witness has the proper foundation to testify on that issue. At this point, Hodgson hasn't done that.

### 3. Motion to preclude Hodgson from "criticizing [Wisconsin Central] for conducting surveillance" (Dkt. 46)

Wisconsin Central says that it has surveillance footage of Hodgson showing that he isn't as impaired as he says he is. Wisconsin Central wishes to preclude Hodgson and his witnesses "from criticizing [Wisconsin Central] for conducting surveillance or otherwise

implying it was wrong or underhanded to do so, calling the surveillance team 'spies' or similar terms, or referencing Plaintiff's suspicions about the surveillance team and his daughter." Dkt. 46, at 1.

Neither party is likely to score points with the jury by name calling, but the court will not police how the witnesses refer to the individuals involved in surveillance. If Wisconsin Central believes that a witness has mischaracterized those individuals, it is free to ask clarifying questions on cross examination.

But there is no relevance to any witness's opinion on the propriety of surveillance or to the witness's beliefs about the intent of those involved. Hodgson says that he should be permitted to testify that he believed that Wisconsin Central was harassing his daughter because it is relevant to his emotional distress. But Hodgson hasn't raised a claim based on an invasion of privacy. Any distress caused by surveillance is simply too remote from Wisconsin Central's alleged negligence to be admissible at trial.

### 4. Motion to preclude Hodgson from referring to Paul Nausieda as the "railroad doctor" (Dkt. 47)

Wisconsin Central retained Nausieda to perform an "independent medical evaluation" of Hodgson, but he does not otherwise have any affiliation with Wisconsin Central. Wisconsin Central wants to preclude Hodgson from referring to Nausieda as the "railroad doctor," but, again, the court will not tell witnesses how to characterize another witness. Wisconsin Central is free to explain the nature of its relationship with Nausieda through direct examination of Nausieda or through cross examination of any witness who Wisconsin Central believes has mischaracterized that relationship.

5. **Motion to exclude evidence of other lawsuits and claims against Wisconsin Central (Dkt. 52)**

Wisconsin Central seeks to exclude evidence of other lawsuits and claims on the ground that they would be irrelevant, unfairly prejudicial, and inadmissible other acts evidence. The court agrees as a general matter that other claims against a party aren't admissible. *See Miller v. Polaris Labs., LLC,* No. 111CV01004TWPDML, 2016 WL 1639087, at *2 (S.D. Ind. Apr. 26, 2016) ("[N]umerous cases . . . have prohibited the use of evidence about other lawsuits or claims against defendants under Federal Rules of Evidence 403 and 404(b) because such evidence is irrelevant, unfairly prejudicial, and invites a trial within a trial which is disfavored.").

Hodgson says that evidence of "other incidents" could be relevant to showing notice and foreseeability. Dkt. 83, at 4. But Hodgson doesn't identify any specific incidents, so the court will grant the motion. If Hodgson wishes to identify one or more incidents at the final pretrial conference, he may ask for reconsideration at that time.

6. **Motion to prelude Hodgson from offering evidence that the railroad industry is "dangerous" (Dkt. 55)**

Wisconsin Central says that Hodgson "should be prohibited from referring to the supposed dangers inherent in railroading and/or the railroad industry as a whole." Dkt. 55, at 1. In support of that request, Wisconsin Central says that "[n]o witness has been disclosed on that subject, and there is no factual support for such comments." *Id.* Hodgson objects on the ground that "the motion is premature" and that Wisconsin Central "fails to cite specific evidence for the Court to exclude." Dkt. 84, at 1.

Both sides are missing a more fundamental point, which is that it simply isn't relevant how dangerous the "railroad industry" is as a general matter. The issue in this case relates to a

stairs handrail, which is not unique to the industry and has nothing to do with the safety of the industry. So the court will grant the motion. Of course, this doesn't preclude Hodgson from presenting evidence about how dangerous the stairs were.

### 7. **Motion to preclude Hodgson from referring to the Canadian National Railway Company (Dkt. 56)**

Wisconsin Central says that it "is an indirect subsidiary of Canadian National Railway Company." Dkt. 56, at 1. It wants to exclude references to the parent company "to avoid juror confusion," presumably because it is concerned about potential bias. Hodgson objects on the ground that "any possible juror confusion is easily remedied," Dkt. 85, but Hodgson doesn't identify any reason why it would be referring to Canadian National Railway Company in the first place. There is no dispute in this case that Wisconsin Central is Hodgson's employer and the proper defendant. So Wisconsin Central's relationship to a parent company simply isn't relevant. The court will grant this motion.

This ruling applies to Wisconsin Central as well. In its motion, Wisconsin Central says that some witnesses may refer to the company "CN," which presumably is an abbreviation for Canadian National. To avoid confusion, Wisconsin Central should direct its witnesses to refer to the company as Wisconsin Central or WCL. If Wisconsin Central believes that will be difficult, the alternative approach would be to replace "Wisconsin Central" with "CN" in all the court documents that the jury will see. All parties and witnesses should be referring to Wisconsin Central in the same way at trial.

8. **"Omnibus" motion (Dkt. 57)**

   a. **Purpose of FELA and the exclusive remedy it provides**

Hodgson doesn't object to excluding evidence or argument about the purpose of FELA, so the court will grant that aspect of the motion as unopposed.

As for the references to FELA providing an exclusive remedy to railroad employees, the court agrees with Hodgson that the jury is likely to be familiar with workers compensation and may wonder how that system applies to this case. To address this concern, the court provided the following instruction in a previous FELA case:

> Some of you may be familiar with the idea of workers compensation, which comes from a state law that applies to many workplace injuries. But this case is governed by a federal law that applies to railroad workers, the Federal Employers' Liability Act, or FELA. So workers compensation does not apply to this case.

*Little v. BNSF Railway Company*, No. 18-cv-166-jdp (W.D. Wis.), Dkt. 102, at 2.

That instruction is consistent with *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006), in which the court of appeals stated that it would be "inappropriate" to "instruct the jury that [the plaintiff] was ineligible for workers' compensation payments." In this case, the court isn't instructing the jury on Hodgson's eligibility for workers compensation, only that workers compensation is not at issue in this case. The instruction should avoid the confusion that arose in *Schmitz* when the jury asked during deliberations whether the plaintiff was receiving workers compensation benefits. *See id.*

The court plans to provide the same instruction in this case, but the parties are free to propose alternative language if they wish. Other than this instruction, the court sees no need to address this issue, so neither the parties nor counsel should include it in their testimony or argument, other than to direct the jury to that instruction.

### b. Evidence or argument regarding the need to punish Wisconsin Central or size or wealth of the company

It is undisputed that punitive damages aren't available under FELA, and Hodgson doesn't identify any relevant purpose for offering evidence about punishment, or the size or wealth of Wisconsin Central, so the court will grant this motion.

### c. Retaliation

Wisconsin Central wishes to exclude evidence that Hodgson "or any witness employed by defendant has faced or will face retaliation for opposing defendant." Dkt. 57, at 4. In response, Hodgson says that "a witness's employment status, position with Defendant and any bias or prejudice associated with their employment may be argued to the jury." Dkt. 98, at 6.

The parties are addressing slightly different issues. Hodgson doesn't suggest that he has any evidence of retaliation, so the court will grant that aspect of the motion. And any evidence or argument that a witness "will face retaliation" would be speculative. But Hodgson is free to ask questions of witnesses about their status as an employee and any biases they may have because of that employment relationship.

### d. Relying on a "per diem" formula for calculating pain and suffering

Wisconsin Central seeks to preclude Hodgson from asking the jury to calculate his pain and suffering using a "per diem" method, which is multiplying a monetary figure by a unit of time. As Hodgson points out, this circuit doesn't impose a categorical bar on that method. *See Waldron v. Hardwick*, 406 F.2d 86, 89 (7th Cir. 1969) ("[A]n inflexible rule treating a per diem argument as reversible error is not advisable. We think that this argument is permissible if made within limitations which the trial judge to insure fairness may impose such as the giving of a suitable cautionary instruction or the taking of other safeguards."); *see also Crecy v. Kankakee*

*Sch. Dist. #111*, No. 15-cv-1014, 2017 WL 6945336, at *6–7 (C.D. Ill. Feb. 6, 2017); *Caletz ex rel. Estate of Colon v. Blackmon*, 476 F.Supp.2d 946, 959 (N.D. Ill. 2007).

So the court will deny this motion as premature. If Hodgson wishes to rely on this method, he must provide notice to Wisconsin Central and the court before trial, explaining his basis for doing so. At that point, Wisconsin Central may object or propose a cautionary instruction.

### 9.   Motion to exclude evidence of loss of consortium (Dkt. 58)

Hodgson says that he isn't asking for damages for loss of consortium, so this motion will be granted as unopposed. Hodgson says that "he opposes the motion as far as Defendant attempts to preclude Plaintiff from offering evidence related to his loss of enjoyment of life, which is part of pain and suffering." Dkt. 86, at 2. But Wisconsin Central's motion is directed at evidence of "the effect of plaintiff's injury upon his family," Dkt. 58, at 1, not of the effect on Hodgson himself, so Hodgson's objection falls outside the scope of the motion.

### 10. Motion to exclude evidence that Hodgson was a "good" or "safe" employee (Dkt. 59)

Wisconsin Central says that whether Hodgson was a "good" or "safe" employee as a general matter is irrelevant. Hodgson's response is that the motion is "premature" because his "traits or habits of being a good worker who follows safety rules and instructions may be admissible at trial under FRE 406." Dkt. 87. But Hodgson doesn't identify what that evidence might be or under what circumstances it would be relevant.

The purpose of motions in limine is to allow the parties to identify the evidence they wish to offer to support a claim or defense and allow a pretrial determination whether that evidence is admissible. A party may not object to a motion in limine simply because there

"may be" admissible evidence; the party must come forward with that evidence. So the court will grant this motion in limine with two caveats. First, Wisconsin Central is contending that that Hodgson was negligent, so evidence that Hodgson was acting safely at the time of the accident is relevant. Second, the ruling applies equally to Wisconsin Central, which may not offer evidence that it is a "good" or "safe" employer as a general matter.

11. **Motion to "preclude plaintiff from asking improper questions regarding safety rules, policies, and duties, and other 'reptile theory' questions of [Wisconsin Central] employee witnesses" (Dkt. 60)**

Wisconsin Central doesn't clearly explain what it means by "reptile theory" questions, but one court described the theory this way:

> [T]he "Reptile Theory" litigation strategy . . . is based on a book titled *Reptile: The 2009 Manual of the Plaintiff's Revolution*, 45 (1st ed. 2009),[that] impermissibly attempts to redefine the standard of care in negligence cases by suggesting to the members of the jury that they have the power to improve the safety of themselves, their family members, and their community by rendering a verdict that will lead to the reduction of "dangerous" or "unsafe" conduct. It is referred to as the Reptile Theory because it "instructs lawyers to appeal to the jurors' own sense of self-protection in order to persuade and prevail," which "awakens the reptilian part of the brain in each juror and overcomes logic and emotion."

*Gannon v. Menard, Inc.*, No. 18cv251JMSMJD, 2019 WL 7584294, at *5 (S.D. Ind. Aug. 26, 2019). Wisconsin Central's motion to exclude any questioning based on this "theory" is simply too broad and ill-defined. Both sides' questions must be governed by the standards governing FELA as articulated in the jury instructions. If either side believes that counsel's questions are departing from those standards and misleading the jury, they may object at that time. *See id.*

12. **Motion to exclude evidence of medical expenses (Dkt. 61)**

Wisconsin Central says that evidence of Hodgson's medical expenses should not be allowed because all of his medical expenses have been paid by Wisconsin Central in accordance

with a collective bargaining agreement. *See Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1565 (7th Cir. 1990) ("[S]ince Varhol could not recover the expenses reflected in those bills, the amounts of those expenses bore little, if any, relevance to this case."). Hodgson agrees that he may not recover past medical expenses, so the court will grant that portion of the motion.

Hodgson says that he should be permitted to recover future medical expenses, and that past medical expenses may be used to estimate future expenses. But Hodgson doesn't allege that he will have to pay future expenses either, and he doesn't explain why the rule should be different for future expenses. The court will reserve a ruling on this part of the motion to give Hodgson an opportunity to explain before excluding this evidence.

### 13. Motion to exclude evidence of Hodgson's financial condition (Dkt. 62)

Wisconsin Central asks for an order "barring Plaintiff from offering any evidence or making any argument as to his financial condition or any financial hardship he or his family have experienced as a result of the accident which is the subject of his complaint." Dkt. 62, at 1. In response, Hodgson says that the motion is too broad because it would encompass evidence of lost wages and lost earning capacity. The court agrees that motion is too broad; Hodgson cannot be prohibited from proving his damages. If Hodgson's attempts to offer testimony about his financial condition that is unrelated to his damages, Wisconsin Central may object at that time.

### 14. Motion to exclude evidence of subsequent remedial measures (Dkt. 63)

After Hodgson's accident, Wisconsin Central says that it replaced the stairs and the handrail, and it asks the court to exclude evidence of the replacement under Federal Rule of Evidence 407, which applies to subsequent remedial measures. Hodgson concedes that the evidence is not admissible to prove negligence, but it asks the court to "reserve ruling on the

motion in order to see how the evidence develops at trial." Dkt. 91, at 1. Hodgson doesn't identify any admissible purpose that the evidence might have, so the court will grant the motion. If Hodgson identifies a permissible purpose for the evidence, it may seek reconsideration.

### 15. Motion to exclude legal conclusions (Dkt. 64)

The court agrees with the general principle that witnesses may not give legal opinions. *U.S. v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008). But the only example that Wisconsin Central provides in its motion is testimony that "the stairs did not provide plaintiff with a safe place to work" or that "the railing was in violation of a building code." As for the first example, a witness may not give the opinion that the defendant violated the law, but Hodgson is not prohibited from offering evidence that the stairs or handrail weren't safe. That's the point of Hodgson's claim.

As for the second example, industry standards are not legal opinions, and the court held in the summary judgment opinion that Hodgson could offer evidence about industry standards. That conclusion is consistent with the Seventh Circuit's Pattern Civil Jury Instructions, which allow the jury to consider "industry custom or safety rules."  Instruction 9.01, comment c.

### 16. Motion to sequester witnesses (Dkt. 65)

Wisconsin Central frames this motion as a request to sequester witnesses under Federal Rule of Evidence 615, and Hodgson doesn't oppose that request. But Wisconsin Central also asks the court to prohibit witnesses from "reviewing any deposition transcripts or video that will be substantively used at trial prior to the time that the witness is called to testify." Dkt. 65, at 1. Rule 615 doesn't include such a prohibition, but the court will reserve a ruling on this

issue to allow the parties to explain why the court should or should not impose Wisconsin Central's proposed bar in this case.

## C. Exhibits

One final matter. Neither side has submitted their exhibits to the court. To allow a meaningful discussion of objections to exhibits at the final pretrial conference, the parties should contact the clerk's office for instructions on submitting electronic copies of their exhibits.

ORDER

IT IS ORDERED that:

1. The court resolves Michael Hodgson's motions in limine as follows:

   a. The motion to "exclude RRB benefits, or any other collateral source," Dkt. 68, is GRANTED as to RRB benefits except for the purpose of impeachment and DENIED as to "any other collateral source." If Wisconsin Central wishes to offer evidence of any other collateral source as evidence, it should first seek permission from the court and identify a permissible purpose for the evidence.

   b. The motion to exclude evidence of future retirement benefits, Dkt. 70, is GRANTED as unopposed.

   c. The motion to exclude evidence of Hodgson's negligence, Dkt. 72, is DENIED.

   d. The court reserves a ruling on the motion to exclude testimony of Brian Weaver, Dkt. 74.

   e. The motion to "exclude any safety rules and evidence that delegates defendant's non-delegable duty to provide plaintiff with a reasonably safe place to work," Dkt. 76, is DENIED.

   f. The motion to exclude evidence of "previous medical conditions," Dkt. 78, is GRANTED in part. Wisconsin Central may not offer evidence or argument that any prior condition, injury or claim caused or contributed

to Hodgson's current injury and damages. The parties may discuss at the final pretrial conference whether Wisconsin Central may offer Hodgson's prior medical history as evidence of malingering.

2. Defendant Wisconsin Central, Ltd.'s motions in limine are resolved as follows:

    a. The court reserves a ruling on the motion to exclude Hebl's opinion on causation, Dkt. 44.

    b. The motion to preclude Hodgson from referring to Hebl as his treating physician, Dkt. 44, is DENIED.

    c. The motion to preclude references to certain standards, Dkt. 45, is GRANTED as to OSHA regulations and Wis. Stat. § 101.11 but DENIED as to the International Building Code and other industry standards.

    d. The motion to preclude Hodgson from "criticizing [Wisconsin Central] for conducting surveillance," Dkt. 46, is DENIED as to the use of the word "spies," but it is GRANTED as to testimony that surveillance was improper and that Wisconsin Central was harassing Hodgson and his family.

    e. The motion to preclude Hodgson from referring to Paul Nausieda as the "railroad doctor," Dkt. 47, is DENIED.

    f. The motion to exclude evidence of other lawsuits and claims against Wisconsin Central, Dkt. 52, is GRANTED.

    g. The motion to prelude Hodgson from offering evidence that the railroad industry is "dangerous," Dkt. 55, is GRANTED.

    h. The motion to preclude Hodgson from referring to the Canadian National Railway Company, Dkt. 56, is GRANTED. Wisconsin Central should be prepared to say at the final pretrial conference how counsel and witnesses should refer to Wisconsin Central during trial.

    i. The motion to exclude evidence or argument about the purpose of FELA, Dkt. 57, is GRANTED.

    j. The motion to exclude references to FELA being Hodgson's "exclusive remedy," Dkt. 57, is GRANTED except that the jury instructions will explain that workers compensation is not at issue in this case.

k. The motion to exclude evidence or argument regarding the need to punish Wisconsin Central or size or wealth of the company, Dkt. 57, is GRANTED.

l. The motion to exclude evidence or argument about retaliation, Dkt. 57, is GRANTED. But Hodgson is free to ask questions regarding a witness's potential bias because of their employment with Wisconsin Central.

m. The motion to preclude Hodgson from relying on a "per diem" formula for calculating pain and suffering, Dkt. 57, is DENIED as premature. If Hodgson wishes to rely on this method, he must provide notice to Wisconsin Central and the court before trial, explaining his basis for doing so.

n. The motion to exclude evidence of loss of consortium, Dkt. 58, is GRANTED.

o. The motion to exclude evidence that Hodgson was a "good" or "safe" employee as a general matter, Dkt. 59, is GRANTED. The ruling applies equally to evidence that Wisconsin Central was a "good" or "safe" employer as a general matter.

p. The motion to "preclude plaintiff from asking improper questions regarding safety rules, policies, and duties, and other 'reptile theory' questions of [Wisconsin Central] employee witnesses," Dkt. 60, is DENIED.

q. The motion to exclude evidence of medical expenses, Dkt. 61, is GRANTED in part. Hodgson may not recover past medical expenses. The court will reserve a ruling on whether Hodgson may recover future medical expenses and whether he may use past medical expenses as evidence of future expenses.

r. The motion to exclude evidence of Hodgson's financial condition, Dkt. 62, is GRANTED in part. Hodgson may present evidence of his financial condition as it relates to his damages.

s. The motion to exclude evidence of subsequent remedial measures, Dkt. 63, is GRANTED.

t. The motion to exclude legal conclusions, Dkt. 64, is GRANTED in part. No witness may give an opinion whether Wisconsin Central violated the

law, but a witness with the proper foundation is not prohibited from giving an opinion about relevant industry standards.

u. The motion to sequester witnesses, Dkt. 65, is GRANTED as unopposed. But the court reserves a ruling on the request to bar witnesses from "reviewing any deposition transcripts or video that will be substantively used at trial prior to the time that the witness is called to testify."

Entered June 16, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge